BAKER, Chief Judge
(dissenting):
I respectfully dissent from this Court’s opinion concluding that Appellant was not convicted of distribution of oxymorphone to LK. This conclusion is contrary to the military judge’s findings, the lower court’s findings, and the record in this case. The majority’s conclusion is also contrary to this Court’s long-standing practice interpreting the language “on or about,” which, in this ease, encompasses the early morning hours of February 15 as well as February 14 for a specification alleging “on or about February 14.” Therefore, the military judge properly *130 found Appellant guilty of distribution on or about February 14, which language encompassed both the factual possibility that Appellant provided LK the drug during the late hours of February 14 or the early morning hours of February 15.
LK is the sixteen-year-old victim who died as a result of Appellant’s distribution. Under specification 3 of Charge II, the Government alleged the following:
In that [Appellant] did, at or near Fort Lewis, Washington, on divers occasions between on or about 14 February 2009 and on or about 15 February 2009, wrongfully distribute some amount of Oxymorphone, a Schedule II controlled substance.
Appellant entered a plea of guilty to this specification as follows:
To specification 3 Charge II: Guilty
Except the words and figures “between” and “and on or about 15 February 2009”; to the excepted words and figures: Not Guilty;
To the Charge: Guilty
Thus, in substance, Appellant’s exceptions resulted in a plea to a specification that would have appeared as follows: in that Appellant did, at or near Fort Lewis, Washington, on divers occasions between on or about 14 February 2009 and -on -or-afeout' 1-5-Febru-ary 2009, wrongfully distribute some amount of Oxymorphone, a Schedule II controlled substance.
Following the entry of Appellant’s pleas, the Government proceeded on the merits. In his opening statement trial counsel stated:
So, if you follow the drugs in this case, Your Honor, you will find that, on 14 February 2009, that this accused obtained essentially a truck-load of Opana and Al-prazolam. ... And that [Appellant] on 14 February 2009, [distributed those two drugs to several soldier's. He also, though, Your Honor, [distributed] the Opana, we know for certain, and probably the ... Alprazolam, to [LK], in the late hours of 14 February 2009, and the early morning hours of 15 February 2009. And it is those two drugs in the very possession of the accused on 14 February 2009, that killed [LK].
During the trial, the prosecution offered, among other things, Appellant’s sworn statement. The statement was admitted as Prosecution Exhibit 27 and recites Appellant’s account of the events during the day and into the late evening of February 14, 2009, during which he obtained several drugs and subsequently distributed those drugs to several individuals including LK. Specifically, Appellant stated that around 9:00 p.m. on February 14, he borrowed a friend’s truck and proceeded to a location where he purchased several oxymorphone pills. According to the statement, about twenty minutes after procuring the drug, he, LK and one of LK’s friends returned to his barracks, Appellant then stated:
Once we got [to] the barracks I gave [S] his pills and then I went back to my room. I put in a movie and we were watching it. When we were watching the movie I crushed up two of the pills that I had gotten for myself and snorted them.... After I snorted the two pills I crushed up the other pill and [LK] and her friend snorted it.
Finally, according to Appellant, he left the room, returned later and fell asleep in the bed with the two girls. He awoke at some point and found LK unresponsive.
At the close of the evidence, the military judge entered the following finding to specification 3 of Charge II:
Of specification 3 of Charge II: Guilty;
Except the word “between” and except the words and figures, “and on or about 15 February 2009.”
The military judge’s exceptions resulted in a finding of guilty of wrongful distribution of oxymorphone “on divers occasions on or about 14 February 2009.” On Appellant’s statement alone, the military judge, sitting as the reasonable trier of fact in the case, could have found that the distribution of oxymor-phone to LK occurred during the evening of the 14th.
However, even if one were to conclude that it occurred during the very early hours of the 15th, (the participants were not keeping careful note of the time), it would still have been *131 considered “on or about” the 14th. In essence, the military judge’s exception of the language “and on or about 15 February 2009” had no legal significance given the fact that the finding included the “divers occasions” language and the “on or about 14 February” language. Thus, the record supports a finding in this case that Appellant distributed oxymorphone to the victim LK “on or about 14 February 2009.”
The qualifier, “on or about” heretofore has been used in cases, like this one, where the exact time or date of an event may not be known or within the recollection of the critical witnesses, but nonetheless fairly orients, the accused to the offense charged. “ ‘On or about,’ however, are words of art in pleading which generally connote any time within a few weeks of the ‘on or about’ date.” United States v. Brown, 34 M.J. 105, 110 (C.M.A.1992). “The words ‘on or about’ in pleadings mean that ‘the government is not required to prove the exact date, if a date reasonably near is established.’” United States v. Hunt, 37 M.J. 344, 347 (C.M.A.1993) (quoting United States v. Nersesian, 824 F.2d 1294, 1323 (2d Cir.1987)). “When a charge employs ‘on or about’ language, the Government is not required to prove the specific date alleged in the charge.” United States v. Allen, 50 M.J. 84, 86 (C.A.A.F.1999). Upon entiy of his pleas, Appellant did not except either the “divers occasions” language or the “on or about” language as it pertained to February 14, 2009. Similarly, the military judge did not except those phrases when he entered his finding to specification 3 of Charge II. The military judge used the date to which the Appellant pleaded guilty knowing that in accordance with this Court’s longstanding ease law and military practice, a conviction “on or about February 14” would cover the potential variances in fact as to the precise moment on February 14 or 15 at which the drug was distributed to LK.
If, at the time of trial, there had been any question or confusion on the part of the defense as to what specification 3 included, counsel had at least two remedies available. First, prior to trial, the defense could have moved for a bill of particulars under Rule for Courts-Martial (R.C.M.) 906(b)(6). Alternatively, since this was a military judge-alone trial, the defense could have requested special findings under R.C.M. 918(b). The defense did neither.
Finally, the majority concedes that the evidence of record proves that Appellant distributed oxymorphone to the victim. However, according to the majority, since this evidence was “presented as the means by which he was 'guilty of the Article 119[(b)(2), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 919(b)(2) (2006) ], ... offense,” this resulted in a theory not presented to the trier of fact on the Article 112a, UCMJ, 10 U.S.C. § 912a (2006), offense. United States v. Bennitt, 74 M.J. 125, 128 (C.A.A.F.2015). This reasoning does not make sense since the sole theory of the manslaughter offense was the distribution to LK, which occurred “on or about” February 14. The majority buttresses its view with the statement that “the Government did not present evidence that Appellant gave oxymorphone to LK in support of the Article 112a, UCMJ, charge.” Bennitt, 74 M.J. at 128. I am not aware of authority that requires the prosecution during the trial of the facts to continually announce what evidence is being offered to support individual offenses, and indeed the majority cites none. In every criminal trial, the charges are presented, the evidence is admitted, and the trier of fact returns a verdict. That is exactly what happened in this case. Thus, it appears the majority is substituting its own finding on' the facts, notwithstanding those entered by the military judge and the CCA, -and without identifying how as a matter of law either the military judge or the CCA erred.[1]
As a result, I respectfully dissent.

. The majority’s decision to reinterpret the meaning of "on or about” and to reverse the CCA's conclusion regarding the distribution to the manslaughter victim in this case seems all the more misplaced, because this Court did not grant this case on that basis and has not heard argument nor received briefs on the issue.